**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EVAN RICHARDSON,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 21-1347** |
| **SOLICITOR MONTGOMERY COUNTY, PA,** *et al.*, | |
| **Defendant.** | |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                               **April 1, 2022**

Plaintiff Evan Richardson brings claims under 42 U.S.C. § 1983 and Pennsylvania state law against Montgomery County, Pennsylvania and Assistant District Attorney Scott Frame (together, the "County Defendants"), Detective Charles Naber and West Norriton Township (together, the "Norriton Defendants"), and unidentified police officers for the alleged violation of his constitutional rights stemming from his wrongful arrest and incarceration for an armed robbery he did not commit. Defendants have moved to dismiss or to strike all or some of Plaintiff's Complaint. For the reasons discussed below, Defendants' motions are dismissed in part and denied in part.

I.    **BACKGROUND**

On September 1, 2018, a police officer responded to an armed robbery at a 7-Eleven store that allegedly involved three African American men with a handgun.[1] The store's security cameras recorded footage of the incident.[2] The police report listed the time of the robbery as

_____

[1] Compl. [Doc. No. 1] ¶ 15.

[2] Compl. [Doc. No. 1] ¶ 15.

11:52 pm.[3] The three suspects were described as wearing hooded sweatshirts, one black and two gray, with their hoods pulled up so that most of their faces were obscured.[4] Witnesses indicated that the men were between 20 and 25 years old and were around six feet tall.[5] Defendant Naber assessed the scene and obtained the security system's video footage of the incident.[6]

On October 18, 2018, Naber learned that a fingerprint taken from the front door of the 7-Eleven purportedly matched to Plaintiff.[7] Around five months later, Naber and another detective met with Plaintiff, who agreed to visit the scene with them.[8] Plaintiff told the detectives that he had used the ATM in that 7-Eleven store to buy an AR 15 rifle at the neighboring Tree Line Sports store.[9] Tree Line Sports informed the detectives that Plaintiff had purchased the rifle on September 21, 2018.[10] As Plaintiff paid for the rifle in installments, the detectives learned that Plaintiff used the ATM in the 7-Eleven multiple times.[11] Police were also aware that Plaintiff worked at Amazon from 6:00 pm until 5:30 am on the night of September 1, 2018, when the robbery occurred, and that he had taken a fifteen minute break from 11:31 until 11:46 pm during his shift.[12]

---

[3] Compl. [Doc. No. 1] ¶ 16.

[4] Compl. [Doc. No. 1] ¶ 18.

[5] Compl. [Doc. No. 1] ¶ 19.

[6] Compl. [Doc. No. 1] ¶ 20.

[7] Compl. [Doc. No. 1] ¶ 21.

[8] Compl. [Doc. No. 1] ¶ 22.

[9] Compl. [Doc. No. 1] ¶ 23.

[10] Compl. [Doc. No. 1] ¶ 24.

[11] Compl. [Doc. No. 1] ¶ 24.

[12] Compl. [Doc. No. 1] ¶¶ 25, 26.

Naber completed an Affidavit of Probable Cause in which he stated that Plaintiff could have punched out for his break and arrived at the 7-Eleven in under five minutes.[13] Defendant Frame approved the affidavit.[14] Naber arrested Plaintiff on or around March 29, 2019, and he was charged with several felonies and misdemeanors related to the armed robbery.[15] After Plaintiff was arraigned that day and was unable to post his $100,000 bail, he was incarcerated for 30 days.[16]

Plaintiff's defense attorney and a private investigator later visited the site of the robbery and learned that the time stamps on the video footage of the robbery were inaccurate.[17] At a preliminary hearing on April 29, 2019, Naber testified that the robbery occurred between 11:38 and 11:40 pm, which was based on the inaccurate time stamps on the store's security footage and contradicted the police report that listed the time of the robbery as 11:52 pm.[18] Following a hearing on February 19, 2020, Judge Melissa Sterling dismissed the indictment against Plaintiff for lack of probable cause.[19] Plaintiff alleges that racial animus motivated Defendants to wrongfully arrest and prosecute Plaintiff, who is an African American man.[20]

---

[13] Compl. [Doc. No. 1] ¶ 27.

[14] Compl. [Doc. No. 1] ¶ 28.

[15] Compl. [Doc. No. 1] ¶ 29.

[16] Compl. [Doc. No. 1] ¶ 30.

[17] Compl. [Doc. No. 1] ¶ 33.

[18] Compl. [Doc. No. 1] ¶¶ 32, 34.

[19] Compl. [Doc. No. 1] ¶¶ 42, 43.

[20] Compl. [Doc. No. 1] ¶ 104.

## II.   MOTIONS TO DISMISS

A plaintiff must "state a claim upon which relief can be granted" to avoid dismissal.[21] The "[f]actual allegations must be enough to raise a right to relief above the speculative level."[22] This requires the plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23] In considering whether a plaintiff has met this burden, a court will accept the information pled in the complaint and any attachments thereto as true.[24] "All relevant evidence and all reasonable inferences that can be drawn from the record are . . . viewed in the light most favorable to the non-moving party."[25]

### A.  Immunity

#### 1.   Assistant District Attorney Scott Frame

The County Defendants first argue that all claims against Frame are barred under the doctrine of absolute prosecutorial immunity. The "heavy burden" of demonstrating that absolute, rather than qualified, immunity applies lies with the prosecutor.[26] To outweigh the presumption that a prosecutor is only entitled to qualified immunity, "a prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question."[27] Courts must consider the precise nature of the prosecutor's conduct as absolute immunity applies to "actions performed in a judicial or 'quasi-judicial' capacity" and not those that are

---

[21] Fed. R. Civ. P. 12(b)(6).

[22] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[24] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994).

[25] *Jordan v. Fox Rothschild, O'Brian, & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994) (citation omitted).

[26] *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (citing *Light v. Haws*, 472 F.3d 74, 80–81 (3d Cir.2007)).

[27] *Id.* at 208 (citing *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006)).

"administrative or investigatory actions unrelated to initiating and conducting judicial proceedings."[28] "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."[29] This can "include the professional evaluation of the evidence assembled by the police."[30]

Plaintiff contends that Frame is not entitled to absolute immunity because the act of determining whether probable cause exists is an investigatory function.[31] The Complaint alleges that Frame assessed Naber's Affidavit of Probable Cause and "approved [it] . . . knowing that specific fa[c]ts were either false or misleading."[32] Although the decision of whether to initiate a prosecution is protected by absolute immunity, Plaintiff's Complaint, construed in the light most favorable to Plaintiff, may be asserting that Frame's evaluation entailed efforts to corroborate the information in the affidavit.[33] As the Court must perform a fact-intensive inquiry to determine whether absolute immunity shields Frame from suit, the County Defendants' motion to dismiss the federal claims against Frame is denied at this juncture.

---

[28] *Id.* (citations and quotations omitted).

[29] *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

[30] *Id.*

[31] Pl.'s Resp. Cnty. Defs.' Mot. Dismiss [Doc. No. 6] at 6.

[32] Compl. [Doc. No. 1] ¶ 28.

[33] The Supreme Court has held that "the work of an advocate," which is covered by absolute immunity, includes the "determination that the evidence was sufficiently strong to justify a probable-cause finding." *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997). Yet, "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley*, 509 U.S. at 274. The exact nature of the function that Plaintiff alleges Frame engaged in is not clear at this stage, so the Court declines to hold that Frame has absolute immunity from suit at this time.

Additionally, the County Defendants contend that Frame is immune from Plaintiff's state law claims. Pennsylvania law provides absolute immunity to "high public officials."[34] The immunity provided under state law is more expansive, and it protects prosecutors from "all civil suits for damages arising out of . . . actions motivated by malice."[35] Accordingly, the County Defendants' motion to dismiss the state law claims against Frame is granted.

　　　　2.  *Detective Naber*

The Norriton Defendants have moved to dismiss the claim against Naber, asserting that Naber is entitled to qualified immunity because the preparation of the Affidavit of Probable Cause did not violate clearly established law.[36] Municipal officials, such as a detective, "performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[37] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."[38] The Court must apply a two-step test[39] to determine whether an official is entitled to qualified immunity under § 1983:

> First, a court must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first

---

[34] *Durham v. McElynn*, 772 A.2d 68, 165 (Pa. 2001).

[35] *Id.*

[36] Norriton Defs.' Mot. Dismiss [Doc. No. 3] at 14.

[37] *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (alterations omitted) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).

[38] *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotations omitted).

[39] *See Saucier v. Katz,* 533 U.S. 194, 201–02 (2001).

step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.[40]

Plaintiff has pled facts asserting that he was subject to unlawful arrest and seizure in violation of the Fourth Amendment. Specifically, Plaintiff contends that there was no probable cause to arrest him, and that Naber's Affidavit of Probable Cause contained material omissions and false assertions. Plaintiff has alleged that Naber violated his constitutional rights.

At the second step of the inquiry, "a police officer is not entitled to qualified immunity if a reasonably well-trained officer in [Defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."[41] In addition, "[a] police officer may not close his or her eyes to facts that would help clarify the circumstances of an arrest."[42] The fact that a magistrate issued a warrant "does not end the inquiry into objective reasonableness. Rather, [the Supreme Court has] recognized an exception allowing suit when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'"[43]

"When confronted with an affirmative misrepresentation in an affidavit submitted to procure a search warrant, a court must excise the false statement from the affidavit . . . [and] plaintiff must prove that the false statements were material to the original probable cause finding."[44] "[W]hen confronted with a false affidavit used to obtain a search warrant, [a court] must remove a falsehood created by an omission by supplying the omitted information to the

---

[40] *Kelly v. Jones*, 148 F. Supp. 3d 395, 404 (E.D. Pa. 2015) (quoting *Pearson v. Callahan,* 555 U.S. 223, 232 (2009).

[41] *Id.* (quotations omitted)

[42] *Id*. (quoting *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir.1986)).

[43] *Messerschmidt*, 565 U.S. at 547 (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

[44] *Sherwood v. Mulvihill*, 113 F.3d 396, 400 (3d Cir. 1997).

original affidavit."[45] The affidavit that Naber presented to the municipal court judge contained two omissions. First, the affidavit states the robbery had "just occurred," but does not specifically mention the robbery occurred 30 seconds before the dispatch call came in at 23:52.[46] This clearly places the time of the robbery between 23:51 and 23:52 (or 11:51 to 11:52 pm), more than five minutes after Naber knew Plaintiff had clocked back into work at 23:46 (11:46 pm).[47] Second, the affidavit omitted the time of the crime as documented by the responding officer in the report, which cast doubt as to whether Plaintiff could have been present during the time of the robbery.

The Norriton Defendants argue that the time discrepancies were "clearly set forth on [the affidavit's] face." However, the Complaint alleges that before the warrant was issued, Naber had reason to believe the timeline submitted in the affidavit was inaccurate and that Plaintiff was at work when the robbery occurred. The timeline was material to a finding of probable cause where Naber relied on a brief fifteen-minute window to establish that Plaintiff was a participant in the robbery, ten minutes of which would involve the commute alone. The remaining evidence pointing to the original probable cause finding relied on Plaintiff's fingerprints purportedly being found on the front door of 7-Eleven and the fact that Plaintiff claimed to have used the ATM at the 7-Eleven.[48] Therefore, drawing all reasonable inferences in Plaintiff's favor at this early

---

[45] *Id.*

[46] Norriton Defs.' Mot. Dismiss [Doc. No. 3] at 2–3.

[47] Norriton Defs.' Mot. Dismiss Ex. D1 [Doc. No. 3] at 24–25. Plaintiff punched back into work at 11:46. When accounting for Plaintiff's five-minute drive from 7-Eleven to Amazon, Plaintiff would have had to have left the 7-Eleven over ten minutes before the dispatch call was made.

[48] According to the Affidavit, Detective Naber had not yet verified whether Plaintiff used the ATM on the date of the crime, merely that Plaintiff used it sometime during the month of October. Additionally, the front door where Plaintiff's fingerprints were found, is presumably used by all customers who frequent the business. Mot. Dismiss Ex. D1 [Doc. No. 3] at 24.

stage, Plaintiff has alleged that Naber should not have applied for the warrant or that Naber misrepresented or omitted information in the affidavit. Accordingly, the motion to dismiss the claim against Detective Naber based on qualified immunity is denied.

### B. *Monell* Claims against Montgomery County and West Norriton Township

The County Defendants and the West Norriton Defendants argue that Plaintiff's *Monell* claims against Montgomery County and West Norriton Township must be dismissed. A plaintiff seeking to bring a § 1983 claim against a municipal entity, "may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'"[49] A plaintiff pursuing a policy theory "must point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject."[50] A plaintiff asserting a theory based on custom must "evince a given course of conduct so well-settled and permanent as to virtually constitute law."[51]

A plaintiff may also plead *Monell* liability on the basis that their alleged "injur[ies] [could] have been avoided had the employee[s] been trained under a program that was not deficient in the identified respect."[52] This requires a plaintiff to allege "facts that would support an inference that the [municipality] was on notice of a risk of police officers committing

---

[49] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal citations omitted) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)).

[50] *Id*.

[51] *Id.* at 106 (citation omitted).

[52] *See Thomas v. Cumberland Cnty.*, 749 F.3d 217, 226 (3d Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)).

constitutional violations and deliberately ignored that risk."[53] Typically, a plaintiff must allege

facts that demonstrate "[a] pattern of similar constitutional violations by untrained employees."[54]

One incident can support a failure-to-train claim where "the need for more or different training is

so obvious," and the deficiency is "so likely to result in the violation of constitutional rights, that

the policymakers . . . can reasonably be said to have been deliberately indifferent to the need."[55]

Plaintiff's Complaint fails to state a *Monell* claim based on a policy, custom, or failure-

to-train theory against Montgomery County or West Norriton Township. As an initial matter, the

Complaint does not "identify a custom or policy, and specify what exactly that custom or policy

was;" allegations that are required for a plaintiff to state a viable *Monell* claim on either of those

bases.[56] Further, the Complaint does not allege that any specific aspects of Defendants' training

programs were deficient. As Plaintiff may be able to state a viable *Monell* claim, these claims are

dismissed without prejudice.

### C.  42 U.S.C. §§ 1983 and 1985 Conspiracy Claims

Defendants next seek to dismiss Plaintiff's conspiracy claims under 42 U.S.C. § 1983 and

§ 1985.[57] A conspiracy claim under § 1983 requires a plaintiff to allege "(1) the existence of a

conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the

---

[53] *See Aponte v. City of Phila.*, No. 20-3373, 2021 WL 816931, at *4 (E.D. Pa. Mar. 3, 2021) (citing *Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014)).

[54] *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

[55] *City of Canton*, 489 U.S. at 390.

[56] *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008)). Plaintiff asks the Court to allow Plaintiff to proceed to discovery so that Plaintiff might determine whether in Montgomery County such a policy or custom exists. Pl.'s Resp. Cnty. Defs.' Mot. Dismiss [Doc. No. 6] at 7.

[57] Plaintiff's § 1985 claim is brought against all Defendants and the § 1983 is brought against all individual Defendants. Compl. ¶¶ 97–109, 118–29.

10

conspiracy by a party to the conspiracy."[58] There must be an allegation that "there was an agreement or meeting of the minds to violate [the plaintiff's] constitutional rights."[59]

Even at this early stage of the litigation, "a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefor."[60] Although direct evidence of such an agreement may be unavailable, courts may consider circumstantial evidence. [61] This evidence might include "that the alleged conspirators 'did or said something . . . to create an understanding,' 'the approximate time when the agreement was made, the specific parties to the agreement[,] the period of the conspiracy, or the object of the conspiracy.'"[62]

Plaintiff's Complaint alleges that the individual "Defendants were all aware of the omitted or misleading facts that made up the affidavit of probable cause" and that they "agreed . . . to fabricate . . . or omit  material facts clearly depicting doubt as to probable cause" which led to the wrongful arrest and incarceration of Plaintiff.[63] Plaintiff alleges that these actions were taken "in accord with longstanding custom and practices," but does not identify what these customs or practices are beyond efforts "to violate the rights of the African-American and Latino community."[64] These facts do not permit the Court

---

[58] *Eichelman v. Lancaster Cnty.*, 510 F. Supp. 2d 377, 392 (E.D. Pa. 2007).

[59] *Rosembert v. Borough of East Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (citation omitted).

[60] *Id.* at 648 (quoting *DeJohn v. Temple Univ.*, 2006 WL 2623274, at *5 (E.D. Pa. Sept. 11, 2006)).

[61] *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018).

[62] *Id.* (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178–79 (3d. Cir. 2010)).

[63] Compl. [Doc. No. 1] ¶ 121.

[64] Compl. [Doc. No. 1] ¶¶ 122–23.

to infer that Defendants conspired to violate Plaintiff's constitutional rights, and this claim is dismissed without prejudice.

Section 1985(3) concerns conspiracies fashioned "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws."[65] To state a claim under § 1985(3), a plaintiff is required to assert:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.[66]

In support of Plaintiff's § 1985 conspiracy claim, the Complaint alleges that Plaintiff is African American while Defendants Frame and Naber are Caucasian, that Defendants have wrongfully arrested and incarcerated disproportionate numbers of African American and Latino/Hispanic individuals, and that Defendants have a history of discriminating against African American and Latino/Hispanic individuals.[67] Plaintiff has not pled any facts indicating that an agreement existed among Defendants. Additionally, there are no specific allegations that link Defendants to broader conduct resulting in disproportionately high rates of wrongful arrest and incarceration of African American and Latino/Hispanic individuals, either currently or in the past. The facts pled in the Complaint do not allow the Court to plausibly infer that a conspiracy existed among Defendants, and this claim must be dismissed without prejudice.

---

[65] 42 U.S.C. § 1985(3). Although Plaintiff does not specifically plead this claim under subsection 3, the Court will do so here in an effort to draw all reasonable inferences in favor of Plaintiff.

[66] *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citations omitted).

[67] Compl. [Doc. No. 1] ¶ 104.

### D.  42 U.S.C. § 1983 Abuse of Process Claim

The Norriton Defendants argue (1) that Plaintiff's abuse of process claim under § 1983 should also be dismissed as it is duplicative of Plaintiff's malicious prosecution claims under the Fourth Amendment, and (2) that Plaintiff has not pled that the Affidavit of Probable Cause was inaccurate. The Third Circuit has held that abuse of process and malicious prosecution claims under § 1983 are not mutually exclusive.[68] An abuse of process claim may be viable where "the defendant has process served based on false statements and uses threat of prosecution for purposes" that are illegitimate.[69] Further, "[a]n abuse of process is by definition a denial of procedural due process."[70]

It is premature to determine that Plaintiff's abuse of process claim is duplicative of other claims pled in the Complaint. As noted in the discussion regarding qualified immunity, Plaintiff has alleged that the affidavit was deficient in that it omitted or misrepresented material facts. Drawing all inferences in favor of Plaintiff, the facts pled in the Complaint give rise to a reasonable inference that Plaintiff was prosecuted for illegitimate purposes. The Norriton Defendants' motion to dismiss this claim is denied.

### E.  State Law Claims

Defendants further contend that Plaintiff's intentional tort claims against Norriton Township and Montgomery County must be dismissed. Pennsylvania's Tort Claims Act "provides that 'no local agency [i.e. municipality] shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof

---

[68] *See Jennings v. Shuman*, 567 F.2d 1213, 1218 (3d Cir. 1977).

[69] *Id.* at 1219.

[70] *Id.* at 1220.

or any other person.'"[71] Although a municipality can be held liable for some "negligent acts," this does not encompass "crime, actual fraud, actual malice, or willful misconduct."[72] Intentional torts fall within the ambit of "willful misconduct."[73] Additionally, if a plaintiff brings intentional tort claims against individual defendants in their official capacities, they will also be dismissed because they "are 'treated as claims against the municipal entities that employ these individuals.'"[74] Plaintiff brings battery, false imprisonment, and intentional inclusion of emotional distress claims against all Defendants, and these claims must be dismissed as to the municipal Defendants as well as the individual Defendants sued in their official capacities.[75]

### III.   MOTIONS TO STRIKE

The County Defendants and the Norriton Defendants have both included motions to strike in their motions to dismiss. Under Federal Rule of Civil Procedure 12(f), a court can strike "any redundant, immaterial, impertinent, or scandalous matter" from a complaint.[76] "Immaterial matter is that which has no essential or important relationship to the claim for relief," whereas

---

[71] *Lakits v. York*, 258 F. Supp. 2d 401, 405 (E.D. Pa. 2003) (quoting 42 Pa. Const. S. §§ 8541–42).

[72] 42 Pa. Const. S. § 8542(a)(2).

[73] *Lakits*, 258 F. Supp. 2d at 405 (citations omitted).

[74] *Id.* (quoting *Smith v. School Dist. of Phila.*, 112 F.Supp.2d 417, 425 (E.D. Pa. 2000)).

[75] The Norriton Defendants specifically argue that Plaintiff's consortium claim must be dismissed because Plaintiff does not allege that he has a spouse in the Complaint. Pennsylvania law provides that "loss of consortium claims derive from the injured spouse's right to recover in tort law." *Stoker v. Green, Tweed & Co.*, No. 18-4503, 2020 WL 4437113, at *16 (E.D. Pa. Aug. 3, 2020) (quoting *Dean v. Phila. Gas Works*, No. 19-4266, 2019 WL 6828607, at *5 (E.D. Pa. Dec. 12, 2019)). Any loss of consortium claim would assert the rights of Plaintiff's partner, and Richardson is the only plaintiff. There is no basis for a loss of consortium claim and it is dismissed with prejudice.

[76] Fed. R. Civ. P. Rule 12(f).

"[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question."[77] The granting of a motion to strike is discretionary.[78]

Plaintiff seeks punitive damages for several claims asserted against municipal defendants, and all Defendants either seek to dismiss these claims or strike them from the Complaint. A municipality cannot be liable for punitive damages with respect to § 1983 claims.[79] Further, punitive damages are unavailable when a plaintiff sues a municipal entity under Pennsylvania law.[80] Accordingly, the punitive damages demand is stricken from the Complaint as to these claims.[81]

The Norriton Defendants also move to strike duplicative claims from the Complaint. Defendants contend that Counts IV and V are redundant, arguing that Count IV sets forth the same claim as Count III (malicious prosecution), and Count V sets forth the same claim as Count I (unreasonable seizure).[82] The Court will grant this motion, and notes that Plaintiff did not oppose the motions to strike and will have an opportunity to amend the Complaint.

## IV.   CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss are granted in part and denied in part.

---

[77] *Baldwin v. Peake*, No. 08-1352, 2009 WL 1911040, at *1 (W.D. Pa. July 1, 2009) (quoting *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1291–92 (D. Del. 1995)).

[78] *Id.*

[79] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

[80] *City of Phila. Office of Housing Cmty. Dev. v. Am. Fed. of State Cnty. and Mun. Emps.*, 876 A.2d 375, 378 (Pa. 2005).

[81] *See Woods v. ERA Med LLC*, No. 08-2495, 2009 WL 141854, at *8 (striking a plaintiff's request for punitive damages when punitive damages were not available for the claims alleged).

[82] Norriton Defs.'Mot. Dismiss [Doc. No. 3] at 18; Compl. [Doc. No. 1] at ECF pages 16–23.